FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JUL 31 PM 3:41
CLERK C Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| FELENTHEAN DEANDRE GRABLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 112-083 |
| ) | |
| CARL L. CANNON, COII, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Telfair State Prison in Helena, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[2]

---

[1] Although he is currently incarcerated at Telfair State Prison, Plaintiff's complaint concerns events that allegedly occurred at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia.

[2] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

## I. BACKGROUND

Plaintiff names the following Defendants in his complaint, all of whom are either officers or inmates at ASMP: (1) Carl L. Cannon, a correctional officer; (2) Terrence J. Conley, the Warden of Security; (3) Dennis Brown, the Warden of ASMP; (4) Channita Rhodes, a correctional officer; (5) FNU Shelly, a correctional officer; (6) FNU Hill, a correctional officer; (7) FNU Scott, a lieutenant and shift supervisor; (8) Chas Cannon, an inmate; and (9) Travis Porter, another inmate. (Doc. no. 1, pp. 1, 4.)

Plaintiff alleges that on June 13, 2011, he was leaving the showers at ASMP when two inmates asked him to pick up a book he had loaned them before he returned to his room. (Id. at 5.) Plaintiff alleges that he next received permission from Defendant Carl L. Cannon to "walk downstairs" to retrieve his book. (Id.) According to Plaintiff, Defendant Carl L. Cannon handcuffed Plaintiff and walked with him part of the way towards his destination until Defendant Rhodes contacted Defendant Carl L. Cannon over the intercom and told him that he needed to go and lock a gate that he and Plaintiff had already passed. (Id.) Plaintiff avers that once this gate was secured, Defendant Carl L. Cannon "threw a thumbs up" sign to Defendant Rhodes, and the cell housing Defendants Chas Cannon and Defendant Porter "popped open." (Id.) Plaintiff next alleges that these two inmates proceeded to stab him repeatedly, each using two "shanks." (Id.) Plaintiff asserts that he "desperately tried to fight [his] way to the other opened gate," although it is unclear where this second gate was located. (Id.) According to Plaintiff, when he reached the second gate, Defendant Carl L. Cannon locked it and told him that he would not open the gate for him. (Id.)

Plaintiff next alleges that he returned to the first locked gate when he was "clear" and his assailants "hesitated," but Defendant Shelly likewise refused to open this gate, stating, "I'm

2

not about to open the gate while you're standing there all bloody." (Id.) Plaintiff alleges that Defendant Hill, who was also present, "finally recognized" Plaintiff and yelled to Defendant Rhodes to open the gate. (Id.) However, Defendant Rhodes allegedly refused, stating that Plaintiff should not have "gone down there." (Id.) Plaintiff next alleges that when Defendant Rhodes learned that Defendant Scott, the shift supervisor, was approaching, she stated over the intercom that Defendant Scott "is out front" and to "[h]urry up and get back in [your] rooms. . . ." (Id.) At that point, Plaintiff asserts that Defendant Shelly "hurried and opened the gate" for him. Plaintiff further alleges that while he was in "Medical," Defendant Scott told him, "I don't think you'll be needing a statement form, because you may not make it." (Id.)

## II. DISCUSSION

### A. Failure to State a Claim Against Defendants Conley, Brown, or Scott

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against Defendants Conley, Brown, or Scott.

First, Plaintiff does not mention Defendants Conley or Brown in his complaint aside from naming them in the caption of the complaint. However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st

3

Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")).

Similarly, although Plaintiff mentions Defendant Scott in his allegations by explaining that Defendant Scott arrived after Plaintiff had been assaulted, he does not give any indication that Defendant Scott refused to assist him. Nor does Plaintiff otherwise indicate that Defendant Scott was aware that Plaintiff had been assaulted prior to his arrival. (See doc. no. 1, p. 5.) Indeed, it appears from Plaintiff's complaint that it was Defendant Scott's arrival that prompted several prison officials to come to Plaintiff's aid. Plaintiff has therefore failed to allege an affirmative causal connection between Defendant's Scott's actions and an alleged unconstitutional deprivation.

Thus, in the absence of an allegation of any connection between the actions of Defendants Conley, Brown, or Scott and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants. Defendants Conley, Brown, and Scott should be dismissed on this basis.

Moreover, Plaintiff's claims against Defendants Conley, Brown, and Scott – the Warden of Security, Warden, and shift supervisor, respectively – are also inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of the other Defendants. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor actually

4

participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, the only mention of Defendant Conley and Brown is in the caption of Plaintiff's complaint, and nowhere does Plaintiff mention that either of these Defendants actually participated in any purported constitutional violation. Similarly, Plaintiff fails to allege a "causal connection" between either Defendant Conley, Brown, or Scott and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[3] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendants Conley, Brown, or Scott because he has offered no allegations suggesting that any of these Defendants knew about any widespread abuse or were responsible for a custom or policy

---

[3]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

5

resulting in deliberate indifference to safety.

In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Conley, Brown, or Scott, and they should be dismissed from the case.

### B. Failure to State a § 1983 Claim Against Defendants Chas Cannon and Porter

Plaintiff also fails to state a claim against Defendants Chas Cannon and Porter, both of whom are inmates at ASMP, because they did not act under the color of state law for the purposes of 42 U.S.C. § 1983. The Supreme Court has held that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the *alleged deprivation was committed by a person acting under color of state law*." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted) (emphasis added). Traditionally, acting under color of state law "requires that the defendant in a § 1983 action have exercised power possessed by the virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49 (internal quotation marks and citation omitted).

According to Plaintiff, Defendant Chas Cannon and Defendant Porter are the inmates at ASMP who allegedly assaulted him. (Doc. no. 1, p. 5.) Plaintiff has not alleged that either of these individuals took any actions pursuant to power possessed by virtue of state law or made possible because they were clothed with the authority of state law. See West, 487 U.S. at 48. Accordingly, Plaintiff fails to state a claim against Defendants Chas Cannon and Porter, and they should be dismissed from the case.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Conley, Brown, Scott, Chas Cannon, and Porter be **DISMISSED** from this case.[4]

SO REPORTED and RECOMMENDED this 31st day of July, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Carl L. Cannon, Rhodes, Shelly, and Hill based on Plaintiff's Eighth Amendment claim of deliberate indifference to safety.

7